# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**SHERI SHUCK,**

      **Plaintiff,**

**v.**                                            **Case No.  8:05-cv-2042-T-30TBM**

**GARY CLARK and**
**CITY OF LAKELAND,**

      **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Motion for Summary Judgment (Dkt. 28) and Plaintiff's Memorandum of Law in Opposition to Defendants' Motion (Dkt. 35). The Court, having considered the motion and the response, and being fully advised in the premises, finds that the motion is **GRANTED in part and DENIED in part**.

## BACKGROUND

Plaintiff began her employment with the City of Lakeland in October 1991 as a Clerk Typist I in the City's Civil Service Department.  In this position, Plaintiff performed various clerical tasks, including processing applications and taking phone calls.  Plaintiff then became an Employment Services Assistant, a position which involved evaluating applicants to determine whether they met the prerequisites for job testing or were otherwise qualified for certain positions.  In this position, in addition to evaluating applicants, Plaintiff continued to perform administrative tasks such as answering telephone calls, taking messages, filing and filling in at the front reception desk.   Plaintiff's title eventually changed from

Employment Services Assistant to Office Assistant II.  As a result, Plaintiff  received an increase in her pay grade.  However, her duties did not change.  Plaintiff currently holds the position of Office Assistant II.

In October of 2000, Plaintiff and several other Civil Service Department employees met with then City Manager, Gene Strickland, to complain about certain activities occurring in the Civil Service Department, specifically in relation to Director Gary Clark.  Listed among the complaints were Clark's frequent absences from the office on personal matters, his use of the City vehicle for personal errands while collecting a monthly allowance for use of his personal vehicle for City business, and his refusal to permit Civil Service employees to document their compensatory time.  While Plaintiff was present at this meeting, the only issues she raised during the meeting related to compensatory time, the lack of movement in her job and pay, and her failure to be reclassified (Plaintiff's depo. at 136, 139).  According to Plaintiff, at no time during the 2000 meeting did she make any complaints about any violation of rules, policies or state and federal laws (Plaintiff's depo. at 137-38, 139).

Following this October 2000 meeting, Plaintiff alleges Clark began to retaliate against her.  Specifically, Plaintiff argues that Clark was hostile towards her, "constantly picked on her", and spoke to her in a different tone than other Civil Service employees.  Additionally, Plaintiff alleges that after her participation in the 2000 meeting, Clark refused to request reclassification of her position and failed to allocate budgeted funds for the reclassification (Plaintiff's Answers to Interrogatories No. 3).  According to Plaintiff she requested reclassification in July 2001 and in 2004 (Plaintiff depo. at 142,155).

In 2005, an issue arose regarding Clark's entitlement to a raise and whether the Civil Service Board should upgrade his position. The City Manager did not think the upgrade was warranted and did not support the raise. However, the Civil Service Board was in favor of giving Clark a raise, and in response to the City Manager's position, a Civil Service board member proposed that the board, in order to eliminate the issue with the City Manager, approve the bonus and use monies from the employee pension to fund the bonus. The allocation of funds from the pension plan was a hotly contested issue in the City. In fact, the Employee Association opposed the proposal and Plaintiff, as a member of the association, participated in this opposition and circulated information to employees via email. According to Plaintiff, Clark began to secretly monitor her emails during this time.

Despite the opposition from employees, the Board approved both Clark's bonus and funding the bonus from the pension fund. Shortly thereafter, Danielle Hornsby, a Civil Service employee, resigned and forwarded the Board a letter, wherein she accused Clark of harassment, waste and mismanagement of the Civil Service department. In her letter, Hornsby complained of Clark's pay increase, his car allowance and use of the City vehicle, and spending office time on personal matters - issues that had been previously discussed in 2000. Upon receiving her letter, the City's Employee Relations (ER) Department investigated Ms. Hornsby's allegations by interviewing employees in the department, including Plaintiff.[1] During her interview, Plaintiff complained of the following:

---

[1] Plaintiff was interviewed on June 28, 2005 and signed her interview summary on July 7, 2005.

- Clark's instruction to Plaintiff to employ a student who was the son of a city employee, even though the student was not on the eligibility list for the position;

- Clark's instruction to Plaintiff to process for hiring an employee who failed the pre-employment test; and

- Clark's refusal to permit Plaintiff and other employees to record compensatory time.

Upon completion of the investigation, ER, on July 12, 2005, prepared a written report of its findings and forwarded the report to the City Manager.  The City Manger, in turn, forwarded the report to the Civil Service Board on July 19, 2005.  On July 25, 2005, the City Manager formally issued the report to the Civil Service Board.  A copy of the report was given to Clark.  In the report, the City Manager summarized ER's findings that Clark was frequently absent from the office during work hours to address personal matters, used a City vehicle while collecting a monthly allowance for use of his personal vehicle for City business, and continued to follow a timekeeping policy which violated the overtime provisions of the Fair Labor Standards Act (FLSA).  The report stated that ER interviewed Civil Service employees when conducting the investigation.

On July 26, 2005, the Civil Service Board met and reviewed the report.  Clark attended the meeting. The Board voted to bar Clark from using the City vehicle and required him to revise his timekeeping policy so as to comply with City policy.

On July 28, 2005, Clark transferred Plaintiff from her office at the Airside facility, to the main Civil Service Office where he worked, which was located across town.  According to Clark, due to the pending maternity leave of a civil service employee, the department

needed someone to cover the employee's duties while she was out.  Plaintiff's transfer became effective August 1, 2005.

On August 1, 2005, counsel for Plaintiff forwarded a letter to the City alleging that Plaintiff's transfer was in retaliation for her participation in the 2005 investigation and requested that the City rescind the transfer.  The transfer was not rescinded, and as a result, Plaintiff filed this lawsuit alleging violations of 42 U.S.C. § 1893 (First Amendment retaliation) and the Florida Public Whistleblower's Act, Florida Statutes § 122.3187.

## DISCUSSION

**A.      Summary Judgment Standard.**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  Moreover, the evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49.

**B.    Legal Analysis.**

Defendant argues that summary judgment is appropriate because Plaintiff cannot establish either of her two claims.

1.    First Amendment Retaliation.

To establish retaliation under the First Amendment, a plaintiff must produce evidence that (1) she engaged in speech relating to a matter of public concern; (2) her interest as a citizen outweigh the interest of the State as an employer; and (3) her speech played a substantial or motivating role in the government's decision to take an adverse employment action. See Akins v. Fulton County, Georgia, 420 F.3d 1293, 1303 (11th Cir. 2005).  If a plaintiff is able to establish these elements, the State is "given the opportunity to rebut the presumption of retaliation by proving that it would have made the same decision even if the speech at issue had never taken place."  Id.

For speech to be considered a matter of public concern, the speech must relate to a matter of political, social or other concern to the community. Id. (citing Watkins v. Bowden, 105, F.3d 1344, 1352 (11th Cir. 1997).  However, as a public employee's speech is rarely entirely private or entirely public, in determining whether the employee's speech is protected, the court must look at "the content, form, and context of the speech to glean its "main thrust." Id. at 1304.  Specifically, a court must discern the purpose of the employee's speech, that is, whether he spoke as a citizen upon matters of public concern or as an employee on matters of only personal interest. See Morgan v. Ford, 6 F.3d 750, 755 (11th Cir. 1993). Additionally, a court should examine the employee's attempts to make the concerns public,

and the employee's motivation in speaking. See Watkins v. Bowden, 105 F.3d 1344, 1353 (11th Cir. 1997).

Plaintiff argues she engaged in protected speech when she complained about Clark's alleged FLSA violations, misuse of pension funds, and violations of Civil Service Rules. While Plaintiff's speech contained a public concern aspect, in looking at her speech as a whole, the main thrust of Plaintiff's speech was not to bring to light issues of public concern, but rather to address personal issues regarding her compensatory time (Plaintiff depo. pp. 245, 247) and ensuring any irregularities in testing procedures were not attributed to her. Id. at 170-171. At no time did she make any effort to relate her concerns to the public, only to administrative bodies during an investigation. See Maggio v. Sipple, 211 F.3d 1346, 1353 (11th Cir. 2000) (finding that public employee's speech was not entitled to First Amendment protection because, among other things, plaintiff did not relate her concerns to the public). As Plaintiff's speech was primarily motivated by her desire to improve the conditions of her employment, it cannot be said that her speech is entitled to First Amendment protection. See Maggio, 211 F.3d at 1354. Accordingly, Defendants are entitled to summary judgment as to Plaintiff's First Amendment retaliation claim.

2.      Florida Whistleblower retaliation.

Florida Whistleblower claims are analyzed using the same framework as a Title VII retaliation claim. See Stone v. Geico General Insurance Co., 2006 WL 2789019 at 10 (M.D. Fla. 2006). To establish a *prima facie* case of retaliation, a plaintiff must show: (1) she engaged in protected activity; (2) she was subjected to an adverse employment action; and

(3) there is a causal connection between the participation in the protected activity and the adverse action.  See id.; see also Shannon v. Bellsouth Telecommunications, Inc., 292 F.3d 712, 715 (11th Cir. 2002).  "If a court finds that the plaintiff has established a *prima facie* case, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for the adverse employment action." Stone, 2006 WL 2789018 at 10.  Once a defendant meets its burden, the plaintiff must then produce evidence that the defendant's proffered reason is false and pretext for retaliation. See id.

a.     Protected activity.

Pursuant to Florida Statute § 112.3187, a state or municipal agency is prohibited from retaliating against an employee for disclosing "any violation or suspected violation of any federal, state or local law, rule, or regulation committed by an employee or agent of an agency. . . which creates and presents a substantial and specific danger to the public's health, safety or welfare ", or "any act or suspected act of gross mismanagement[2], malfeasance, misfeasance, gross waste of public funds . . .or gross neglect of duty."   Fla. Stat. § 112.3187(5)(a)-(b) (2005). Id.   Aside from Plaintiff's complaints about Clark's alleged FLSA violations, none of her other complaints rise to the level of being complaints of gross mismanagement or malfeasance, or complaints regarding issues that pose a substantial danger to the public's health, safety or welfare.  While Plaintiff's complaint about her compensatory time constitutes protected activity under the Florida Whistleblower's Act, in order to establish liability under the statute, Plaintiff must still produce evidence that as a result of

---

[2] Gross mismanagement is defined as "a continuous pattern of managerial abuses, wrongful or arbitrary and capricious actions, or fraudulent or criminal conduct which may have a substantial adverse economic impact."

engaging in this protected activity, she suffered an adverse employment action. Additionally, Plaintiff must show a causal connection between the protected speech and an adverse employment action.

        b.      Adverse employment action and causal connection.

Plaintiff alleges that her transfer to the main Civil Service office was in retaliation for her participation in the 2005 investigation.[3]   According to Plaintiff, subsequent to the transfer, her job became more difficult because she lacked the privacy to work on testing materials and was forced to store the testing materials in her car.  Specifically, Plaintiff alleges that because her desk was located in the reception area of the main office, when she was required to leave her desk throughout the day, she would have to gather her testing materials, transport them to her car, and place them in her car to ensure they were not compromised. This inability to have a secure location to store testing materials, according to Plaintiff, made it difficult to satisfactorily perform her job duties.   Pursuant to Section 112.3187(c), a transfer done within the terms and conditions of employment may be considered an adverse employment action.

As discussed *supra*, Plaintiff's transfer occurred within days of ER's 2005 investigation of Clark.  While Clark has attempted to argue that at the time he made the

---

[3] At no time did Plaintiff suffer a demotion, decrease in pay, change in title or an increase or decrease in her job duties as a result of the transfer.  While Plaintiff provides a litany retaliatory actions in her response motion, during her deposition, she indicated the only retaliation she faced as a result of the 2005 investigation was her transfer. (Plaintiff's depo. pg. 185).  Any retaliatory adverse employment actions she allegedly faced as a result of her complaint in 2000 is now time barred. See Fla. Stat. 112.3187 (8) (2005) (stating that a civil action must be brought within 180 days of the adverse employment action, or within 180 days of the final local agency decision).

decision to relocate Plaintiff, he lacked knowledge of both Plaintiff's participation in the investigation and the information she provided during the investigation, this argument is arguably belied by the July 25, 2005 memorandum to the Civil Service Board from the City Manager wherein Clark is listed as having been carbon copied.   In the memo, the City Manager indicates that civil service employees were interviewed during the investigation. While the memo does not mention any employees by name, taking the facts in the light most favorable to Plaintiff, a reasonable juror could find that Clark had knowledge of Plaintiff's participation in the 2005 investigation at the time he made the decision to transfer her. Accordingly, for purposes of presenting a *prima facie* case, Plaintiff has sufficiently established a causal connection between her participation in the investigation and her transfer.

      C.      Legitimate Business Reason and Pretext.

As Plaintiff has established a *prima facie* case, in order to sustain a motion for summary judgment, Defendants must proffer a legitimate business reason for her transfer. Defendants argue that Plaintiff was temporarily moved to the Civil Service office to address a personnel shortage caused by the impending maternity leave of another employee.   Clark testified during his deposition that Plaintiff was transferred because there was no other employee he could transfer. (Clark depo. pg. 61).   Plaintiff, however, argues that Defendants' reason is pretextual because it was unnecessary to transfer her.   According to Plaintiff, an open part-time position existed which could have been used to address the shortage during the five month period of the maternity leave, rather than uprooting Plaintiff and moving her

to the main office.  In fact, Clark admitted in his deposition such a position existed at the time he transferred Plaintiff. (Clark depo. pgs. 62-63).  Plaintiff also argues that the employee whom she temporarily replaced worked primarily on pension issues, an area in which Plaintiff had no experience.  Plaintiff further argues that Defendants' reasons are pretextual because upon being transferred, Plaintiff never performed any of the duties of the absent employee, despite that being the reason she was transferred.  (Plaintiff's depo. p. 188).

While Defendant has articulated a legitimate business reason for Plaintiff's transfer, Plaintiff has established sufficient grounds to avoid summary judgment by testifying that she never performed any of the duties for which she was transferred.  Whether Plaintiff's transfer was in fact done to address a pending need in the main office, or done in retaliation for her participation in the 2005 investigation is a determination for the jury.

It is therefore ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment (Dkt. 28) is **GRANTED in part and DENIED in part** as stated herein.

**DONE** and **ORDERED** in Tampa, Florida on March 1, 2007.

_____

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE


**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2005\05-cv-2042 Motion for Summary Judgment.frm